THE TOWNSHIP OF LAWRENCE IN THE COUNTY OF MER-
CER, PROSECUTOR, v. THE STATE BOARD OF TAX AP-
PEALS OF THE STATE OF NEW JERSEY ET AL., RE-
SPONDENTS.

Argued January 17, 1940—Decided April 9, 1940.

Before Justices Trenchard, Case and Heher.

For the prosecutor, *Harvey T. Satterthwaite.*

For the respondents, *S. Arthur Stern* and *Ralph M. Peitzman.*

The opinion of the court was delivered by

Case, J. The argument is on the return of two writs of *certiorari* bringing up the judgments entered by the State Board of Tax Appeals concerning the 1935 and 1936 assessments, respectively, on the lands and buildings of Louise M. Murray situated in the township of Lawrence, county of Mercer, and bounding on the Turnpike Road leading from Trenton to Princeton and other lesser roads. The appeals were consolidated on the taking of the testimony and in the argument before us.

The 1935 assessment was: Land $9,750, improvements $36,000, total $45,750. The 1936 assessment was: Land $13,500, improvements $30,000, total $43,500. On the appeals by the taxpayer the Mercer County Board of Taxation affirmed the 1935 assessment of $9,750 on land and reduced the assessment on improvements to $31,000, leaving an aggregate of $40,750, and dismissed the 1936 appeal. The taxpayer then appealed to the State Board of Tax Appeals with the result that the 1935 assessment was retained at $9,750 on land and reduced to $26,000 on improvements, a total of $35,750, and the 1936 assessment was reduced to $12,000 on land and $26,000 on improvements, leaving a total assessment of $38,000.

The reasons for reversal which are sufficiently stated (*Simmons* v. *Passaic,* 55 *N. J. L.* 485) are that there was no competent legal evidence before the State Board of Tax Appeals upon which its judgments may be sustained; that the said board in reaching its judgment failed to be guided by the preponderance of the competent and relevant testimony; and that the said board failed to place the burden of proof upon the taxpayer but required the township to prove by the weight of the evidence that the assessment made by

lawful authority was a correct assessment. There certainly was sustaining evidence before the board; and we find no manifestation of misconception by the board as to where the burden of proof lay. We shall further consider the actual preponderance of proof.

Our function is outlined in the statutes, which include *R. S.* 2:81-8 and *R. S.* 2:81-12, and in numerous decisions. We are to determine disputed questions of fact as well as of law and to that end are to inquire into the facts, as well those disclosed by the testimony taken before the tribunal below where, as here, a party presents it, as those produced by deposition where, also as here, depositions have been taken according to the practice. It is for us to make an independent determination of facts (*Trenton, &c., Traction Corp.* v. *Mercer County Tax Board,* 92 *N. J. L.* 398), weigh the evidence and render such decision as we think proper according to the view that we take of the evidence. *Gibbs* v. *State Board of Taxes, &c.,* 101 *Id.* 371. We have the power, when satisfied from the evidence that the value of taxable property has been assessed too high, to reduce the same to the proper and just amount (*Lehigh Valley Railroad Co.* v. *State Board,* 102 *Id.* 576, 579; *New Jersey Bell Telephone Co.* v. *Camden,* 122 *Id.* 270), and, by like reasoning, particularly under our interpretation of *R. S.* 2:81-12, *supra,* to raise the assessed valuation when the evidence shows it to be too low; although the Supreme Court does not always feel called upon, in setting aside the valuations fixed below, to establish a new valuation. *Kearny* v. *State Board of Taxes, &c.,* 103 *Id.* 26. Nevertheless, the State Board of Tax Appeals occupies an important position in the system of taxation of the state, especially for the determination of disputed questions of fact (*Kearny* v. *State Board, supra*), and in weighing the evidence and making our finding we do not disturb the judgment of the state board, on questions of fact, unless the evidence is persuasive that the board erred in its determination. *Tennant* v. *Jersey City,* 122 *Id.* 174; *affirmed,* 123 *Id.* 200; *Gannon* v. *State Board of Tax Appeals,* 123 *Id.* 450; *Skouras Theatres Corp.* v. *State Board of Tax Appeals,* 123 *Id.* 52.

It will be observed that the 1935 assessment for land as

found by the state board is precisely that which was made by the assessor and sustained by the county board, namely, $9,750; and that the 1936 assessment on land, as found by the state board, is $12,000, an increase of $2,250 over the amount which all of the taxing authorities agreed upon in 1935 and $1,500 less than the 1936 figure fixed by the assessor and approved by the county board. The chief dispute, therefore, is on the assessments for improvements which the state board found in each year to be of the figure of $26,000 against the assessor's valuations of $36,000 in 1935 (reduced by the county board to $31,000) and $30,000 in 1936. The bulk of the testimony is by four witnesses who qualify as experts in valuations, two of them testifying for the township and two for the taxpayer. One of these witnesses for the taxpayer places the value of the land at $14,800. This testimony, together with that given by the witnesses for the township, causes the testimony to predominate in support of the assessor's value for the year 1936, namely, $13,500. We conclude that the 1936 valuation for land should be $13,500.

The buildings are extensive and numerous. The main residence is substantially built, constructed of stone with frame addition and in good state of repair. It has such fundamental and monetary value as goes with an old structure, modernized by as many of the conveniences of the day as are practicable for country houses. There are a substantial farmer's house, other tenant houses, a large and modern barn for the housing of horses and the storage of farm crops, a commodious dairy barn for the keeping and milking of cows, also concrete silos, sheds and numerous supplemental buildings. There are difficulties in the way of arriving at true value, depending in part upon whether the property is to be regarded as a unit for practical farming operations or as a gentlemen's estate maintained for pleasant living or as a potential field for subdivision and home-site development. The farm lands, with appurtenant buildings, are under lease to a practical farmer and the live stock and farming machinery and equipment are owned by him. The great bulk of the property is therefore devoted to the uses of commercial farming. The market in that locality for expensive country

estates seems to be presently surfeited. We have no satisfy-
ing evidence that the entire tract is in demand for purposes
of subdivision and resale. The subtraction of a part of the
lands for suburban house-building sites would, necessarily,
reduce the return on farming operations and disturb the
balanced ratio of land to buildings, and could hardly be
accomplished without impairing the acreage value of the
remaining lands and also the value to the property of the
buildings. Likewise such a development would likely impair
the suitability of the remainder of the property for use as a
"country estate" should that market revive.

Weighing all of the evidence and considering the various
conflicting factors, we cannot, with assurance, say that the
improvements were undervalued by the state board. We find
that the assessments should remain as determined by that
board except that the 1936 assessment on land should be
increased to $13,500. That will be the order. Costs to
respondents on the 1935, and to the prosecutor on the 1936,
proceeding.